CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA A. BOERSCH (CABN 126569)
Chief, Criminal Division

DANIEL N. KASSABIAN (CABN 215249)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7034
Facsimile: (415) 436-7234
daniel.kassabian@usdoj.gov

Attorneys for United States of America

FILED
Dec 11 2025
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DAVID DUMITRU,<br><br>Defendant. | CASE NO. 3:25-mj-71462-MAG<br><br>MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR DETENTION |

# TABLE OF CONTENTS

Page

I. SYNOPSIS ....................................................................................................... 1

II. LEGAL STANDARDS ....................................................................................... 1

A. Whether The Court Should Hold A Detention Hearing ........................................ 1

B. Whether The Court Should Detain The Defendant After A Hearing ...................... 3

II. THE DEFENDANT PRESENTS A SERIOUS RISK OF FLIGHT ................................. 4

A. Incentives To Flee: Weight Of The Evidence And Potential Punishment ................ 4

B. Ability To Flee: Access To Resources That Would Enable Flight .......................... 5

C. Ties To The Jurisdiction And The United States ................................................ 6

D. Reliability And Trustworthiness Of The Defendant ............................................ 6

III. THE SECTION 3142(G) FACTORS WEIGH IN FAVOR OF DETENTION ....................... 7

IV. CONCLUSION ................................................................................................. 7

# TABLE OF AUTHORITIES

Page(s)

## Cases

*United States v. Cook*,
87 F.4th 920 (8th Cir. 2023) .......... 2
*United States v. Diaz-Hernandez*,
943 F.3d 1196 (9th Cir. 2019) .......... 4
*United States v. Erazo-Calix*,
No. 1:24-CR-00150-AKB, 2024 WL 4505038 (D. Idaho Oct. 16, 2024) .......... 2
*United States v. Figueroa-Alvarez*,
681 F. Supp. 3d 1131 (D. Idaho 2023) .......... 2, 3
*United States v. Gebro*,
948 F.2d 1118 (9th Cir. 1991) .......... 7
*United States v. Motamedi*,
767 F.2d 1403 (9th Cir. 1985) .......... 3
*United States v. Nguyen*,
No. 3:24-MJ-71474-MAG (LB), 2024 WL 4584574 (N.D. Cal. Oct. 25, 2024) .......... 2
*United States v. Powers*,
318 F. Supp. 2d 339 (W.D. Va. 2004) .......... 2
*United States v. Santos-Flores*,
794 F.3d 1088 (9th Cir. 2015) .......... 3, 4
*United States v. Singleton*,
182 F.3d 7 (D.C. Cir. 1999) .......... 2
*United States v. Spirea*,
No. 3:24-CR-00383-2-AN, 2024 WL 4903759 (D. Or. Nov. 27, 2024) .......... 2
*United States v. White*,
No. 4:18-CR-00025-YGR, 2018 WL 5291989 (N.D. Cal. Oct. 19, 2018) .......... 2
*United States v. Winsor*,
785 F.2d 755 (9th Cir. 1986) .......... 4

## Statutes

18 U.S.C. § 1708 .......... 5
18 U.S.C. § 1344 .......... 5
18 U.S.C. § 3142(e) .......... 1, 3
18 U.S.C. § 3142(f) .......... 1, 2, 3
18 U.S.C. § 3142(g) .......... 3, 4

# I. SYNOPSIS

In November of 2025, a grand jury sitting in the District of Nebraska returned an indictment against David Dumitru and three others for conspiring to commit bank fraud, bank fraud, and possessing stolen mail. The charges stem from a scheme operating coast-to-coast and targeting churches. The defendant and his co-conspirators intercepted and stole donation checks mailed to several churches, deposited those checks into fraudulent bank accounts, then withdrew the cash proceeds, and used the money for their own benefit.

In December of 2025, Dumitru was arrested 1,600 miles away from the District of Nebraska, in Ukiah, California on his federal warrant. Dumitru is a Romanian citizen and is unlawfully present in the United States.

The United States is respectfully seeking to detain the defendant pending trial. Based on the nature of his charges, the Court must first determine whether a detention hearing is warranted because there is a "a serious risk that such person [i.e., the defendant] will flee." 18 U.S.C. § 3142(f)(2)(B). The Court must then determine whether the defendant should be detained because there are "no condition or combination of conditions will reasonably assure the appearance of the person [i.e., the defendant] as required and the safety of any other person and the community." *Id.* § 3142(e)(1).

The government submits the defendant's history of movement into and across the United States, coupled with the underlying facts of his indictment, show he is a serious flight risk and warrants a detention hearing pursuant to 18 U.S.C. § 3142(f)(2)(B). That same evidence indicates he should be detained pending trial.

# II. LEGAL STANDARDS

## A. Whether The Court Should Hold A Detention Hearing

Defendant Dumitru does not face charges that entitle the government to a detention hearing pursuant to 18 U.S.C. § 3142(f)(1). Thus, the government moves for such a hearing pursuant to 18 U.S.C. § 3142(f)(2)(A) because there is a serious risk that the defendant will flee.

Some courts, including those in the Northern District of California, have suggested a low threshold in triggering a detention hearing. "Because of the immediacy with which the hearing should happen, the government or Court need only express their belief, or provide a minimal factual basis, that

the defendant poses a serious risk of flight for the hearing to commence." *United States v. White*, No. 4:18-CR-00025-YGR, 2018 WL 5291989, at *4 (N.D. Cal. Oct. 19, 2018) (following *United States v. Powers*, 318 F. Supp. 2d 339, 341 (W.D. Va. 2004)); *United States v. Nguyen*, No. 3:24-MJ-71474-MAG (LB), 2024 WL 4584574, at *7 (N.D. Cal. Oct. 25, 2024) ("Here, the government did more than express its belief, and it did not overplay the issues about possible flight risk: . . . [it provided] a fuller description of erratic and concerning behavior in this and other districts . . . that gave rise to a substantial concern about volatility, amenability to supervision, and a resulting concern about a serious risk of flight. That gets the government its detention hearing under 18 U.S.C. § 3142(f)(2) based on a serious risk of flight.") This is consistent with the mere nature of a filed charge—based on a probable cause determination by a grand jury or court officer—as being sufficient to warrant a detention hearing pursuant to § 3142(f)(1). *Compare United States v. Singleton*, 182 F.3d 7, 12 (D.C. Cir. 1999) ("The decision whether to hold a [detention] hearing occurs based on even less information than a decision to detain or release: a detention order is based on a hearing, while an order to hold a hearing is based on a proffer of what the hearing might establish.") The government asserts that a low threshold akin to probable cause is appropriate.

That stated, other district courts in the Ninth Circuit that have held otherwise, stating:

> The Government must demonstrate serious risk of flight by a preponderance of the evidence to trigger a detention hearing under § 3142(f)(2)(A). [citations omitted] More finely put, this means that the Government must demonstrate that it is more likely than not that there is a serious *risk* that the defendant will flee, not that it is more likely than not that the defendant *will* flee.

*United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1138 (D. Idaho 2023); *accord United States v. Erazo-Calix*, No. 1:24-CR-00150-AKB, 2024 WL 4505038, at *3 (D. Idaho Oct. 16, 2024) ("This Court, however, declines to disturb the *Figueroa-Alvarez* analysis [that] identifies the appropriate standard for determining a risk of flight as a preponderance of the evidence."); *United States v. Spirea*, No. 3:24-CR-00383-2-AN, 2024 WL 4903759, at *4 (D. Or. Nov. 27, 2024) (adopting the analysis in *Figueroa-Alvarez*). Likewise, in the Eighth Circuit, the original circuit for this case, it appears that the government must show by a preponderance of the evidence that the defendant presents a serious risk of flight in order to trigger a detention hearing. *United States v. Cook*, 87 F.4th 920, 924 (8th Cir. 2023)

("the district court expressly '[found] by a preponderance of evidence that [Cook] presents a serious risk of flight or nonappearance if she were released. See 18 U.S.C. § 3142(f)(2)(A)' By including a reference to the risk of nonappearance, a critical § 3142(e)(1) issue, the district court clarified that it had separately considered two issues, risk of flight and risk of nonappearance.").

The more recent cases, following the reasoning of *Figueroa-Alvarez*, have also delineated the factors a court may consider in determining whether the defendant presented a serious *risk* of flight pursuant to 18 U.S.C. § 3142(f)(2)(B) to warrant a detention hearing. After distinguishing risk of flight from risk of non-appearance, the court in *Figueroa-Alvarez* analyzed four categorical factors that "relate to serious risk of flight," and then delineated the types of information within each factor that it evaluated in that specific case as the related to the alien defendant in that case:

(i) incentives to flee, including weight of the evidence and potential punishment;

(ii) ability to flee—i.e., defendant's access to resources that would enable flight;

(iii) ties to the jurisdiction and the United States, including length of residence, family ties; and

(iv) reliability and trustworthiness of the defendant, including any illegal reentry after removal, prior violations of terms of supervised release/probation/parole, prior failures to appear, and substance abuse.

*See Figueroa-Alvarez*, 681 F. Supp. 3d at 1136-45. The court considered "these factors as part of the 'totality of the evidence.' [citation]. No one factor is dispositive." *Id*. at 1136 (quoting *United States v. Santos-Flores*, 794 F.3d 1088, 1092 (9th Cir. 2015)).

**B. Whether The Court Should Detain The Defendant After A Hearing**

The Bail Reform Act permits pretrial detention of a defendant where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id*. A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B). "[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in § 3142(g)."

*United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Categorical grants or denials of bail, not tethered to an individualized determination, are impermissible. *Id*. Consideration of factors outside those articulated in section 3142 is also disfavored. *Id*.

Ultimately, the four factors to determine whether to detain pretrial are: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community by the defendant's release. 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

When the defendant is an undocumented alien, facts in connection with that status can be considered by a court in evaluating flight risk, even though the fact of the defendant's involuntary deportation may not. *See generally, Santos-Flores*, 794 F.3d at 1092-93. Thus, a court may consider factors that might have some relationship to the fact that the defendant is an undocumented alien, such a defendant's "violation of the terms of his supervised release, his multiple unlawful entries into the United States, his prior failure to appear when required in state court, his use and possession of fraudulent identity documents, and the severity of the potential punishment and the weight of the evidence against him. *Id*. at 1092. Considering these factors does not "create a categorical rule that would prevent release for undocumented defendants . . . ." *Id*.

## II. THE DEFENDANT PRESENTS A SERIOUS RISK OF FLIGHT

The Court should hold a detention hearing for defendant Dumitru given the totality of circumstances as discussed below.

### A. Incentives To Flee: Weight Of The Evidence And Potential Punishment

The Indictment articulates the general scheme that the defendant participated in: stealing donation checks intended for churches out of mailboxes. By targeting churches, and then using automated teller machines (ATMs) to deposit the stolen checks, the defendant and his co-defendants hoped, and successfully did for a period of time, to avoid detection by the victims and by law

enforcement of their illicit activities. Additionally, when depositing stolen checks, the defendant and his co-defendants used fraudulent accounts to further hide their criminal enterprise. They did this by opening bank accounts in other people's names and using other people's identity documents.

While the scheme was designed to avoid detection, the defendant could not remain invisible. ATM surveillance video captured him on numerous occasions depositing checks and accompanying co-defendants to various ATMs as they did the same. Cross referencing the ATM surveillance video time stamps with bank records, law enforcement was able to piece together exactly what check was deposited when, as demonstrated in Counts II-IX of the Indictment. The evidence of the defendant's guilt and his involvement in the wider scheme is strong.

When convicted, defendant Dumitru faces a maximum statutory sentence of 30 years in prison and a $250,000 fine for the conspiracy to commit bank fraud in violation of 18 U.S.C. § 1344 and 1349 and that same penalty for each individual bank fraud charge. Additionally, he faces 5 years in prison and a $250,000 fine for possession of stolen mail in violation of 18 U.S.C. § 1708. The government estimates defendant Dumitru's guidelines range to be 27-33 months imprisonment based on a total offense level of 18 (including a three-level reduction for acceptance of responsibility and a two-level reduction for being a zero point offender) and a Criminal History Category of I. However, the government also anticipates requesting an upward variance, based on the nature of the case and the fact the defendant's criminal history is likely underrepresented. Additionally, there are collateral consequences to a conviction, including deportation and a hefty restitution order.

The weight of the evidence coupled with the consequences of conviction are big incentives for defendant Dumitru to flee.

**B. Ability To Flee: Access To Resources That Would Enable Flight**

In addition to having a motive to flee, the defendant appears to have the means. Defendant Dumitru is a Romanian national. He entered the country with his father in January of 2020 without legal status, was processed and released into the U.S. pending further immigration proceedings. The government does not have information at this point about his compliance with those immigration proceedings, but surmises that his frequent movements across the country are not being reported as required. What can be deduced from the facts is that the defendant has ties to another country and the

knowledge to move freely between borders without documentation. That makes him an international flight risk. His frequent movement across the United States further suggest he is likely to flee from the District of Nebraska.

Additionally, as discussed above, the entire scheme was about taking money meant for someone else and re-directing it to the defendant and his co-defendants. They were successful on numerous occasions and those funds have not been recovered. Thus, the defendant appears to have the financial means to flee across or even outside of, the United States.

**C. Ties To The Jurisdiction And The United States**

As noted, the facts of this case involve a scheme that operated literally coast-to-coast. The investigation revealed checks were stolen from locations in Nebraska, Ohio, and Kentucky and then deposited in ATMs located in Missouri, Florida, North Carolina, South Carolina, and Oregon. Defendant Dumitru was arrested in California.

Outside of his criminal activities in Nebraska, it does not appear that the defendant has any ties to that District and no incentive to return there to answer the Indictment unless taken there in-custody by the U.S. Marshal Service. But it further appears that the defendant does not have any ties to any district—family, work, property, or other community bonds—that would incentivize him to submit to any court orders. To the contrary, it appears his connections would be more inclined to continue to shield him from the consequences of his criminal actions. Indeed, the investigation suggests there is a family relationship between all the co-defendants in this case, strengthening the argument that the defendant lacks any social ties that would bind him to the United States or a specific district of his own volition during the pendency of a criminal proceeding. Further exacerbating this is the fact defendant Dumitru is the only defendant arrested in this multi-party conspiracy case at this time. Thus, he and his support system have a strong incentive to flee.

**D. Reliability And Trustworthiness Of The Defendant**

The Indictment shows the entire case is built on defendant Dumitru's and his co-defendants' lies. The defendant deposited checks meant mainly for religious entities. Implicit in doing so is a fraudulent representation that he was doing so with the consent of or on behalf of the entities. He was not. Further, the checks were deposited into fraudulent accounts—accounts bearing someone else's name and

identification documents. It is unclear at this point in the investigation whether these fraudulent accounts were opened using the documents of real people, or if the documents themselves are fraudulent. Either way, it implies a lack of reliability and trustworthiness on behalf of the defendant – he has not been honest with something as basic as his name. Additionally, it suggests defendant Dumitru has access to fraudulent identification documents and used a fake name, which could also enable flight.

**III. THE SECTION 3142(G) FACTORS WEIGH IN FAVOR OF DETENTION**

The government has made a showing that defendant Dumitru should be detained. Even if he demonstrates some ties to the community, they do not overcome the other factors in favor of detention based on the information before the Court. Evidence of his guilt and likely period of federal imprisonment "makes it more likely that he will flee. . . ." *United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cir. 1991) (affirming district court finding government met burden of showing flight risk and danger to the community in motion for pretrial detention pending re-trial where defendant faced lengthy period of incarceration). Outside of a period of incarceration, his criminal conviction would have collateral consequences, including deportation and the risk of a steep restitution order, further depriving him of his financial assets.

In addition to lacking ties to any district, and most specifically the District of Nebraska where he is wanted, the defendant is unlawfully present and can choose to flee at any time. By contrast, any restraints the Court can impose short of detention require a level of voluntary compliance with supervision. But defendant is a poor candidate for supervision given his lack of ties to any specific district in the United States. The fraudulent nature of his crime also makes him a poor candidate for supervision – supervision requires a level of honesty between the officer and the supervisee – the defendant has not shown himself capable of that. Given this track record, there is no reason for this Court to believe that defendant Dumitru is amenable to pretrial supervision by this Court, or that he will continue to follow pretrial orders for the entirety of this case, including trial, conviction, or surrender, if/when those dates come to pass.

**IV. CONCLUSION**

In sum, defendant Dumitru has a strong incentive to flee, given the strength of the evidence against him, the likelihood he would face a period of time in federal prison, and the collateral

consequences, including the involuntary removal of himself from the United States and of his money from him for restitution. He appears to have both the financial means and knowledge of the methods necessary for flight, including flight from the country. He appears to have no ties to the District of Nebraska beyond his criminal activity there and has traveled across the United States, in addition to a country outside of it. Additionally, his family appears to be involved in the very conspiracy defendant Dumitru is charged with—providing an incentive for his support system to help him flee. Finally, the facts of the indictment show the defendant is not reliable or trustworthy. For the foregoing reasons, the Court should detain defendant Dumitru pending trial, or at least have a full detention hearing to determine additional facts that defense might present in rebuttal.

DATED: December 11, 2025

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/s/
DANIEL N. KASSABIAN
Assistant United States Attorney